IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERANN PAVAO-KAAEKUAHIWI,<br><br>Defendant. | CR. NO. 19-00082 JMS<br><br>ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 32 |

### ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 32

### I. INTRODUCTION

Defendant Terann Pavao-Kaaekuahiwi ("Defendant") filed a motion, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Phoenix ("FCI Phoenix"), based on her obesity and the COVID-19 pandemic. After Defendant's motion was filed, the court was informed that Defendant contracted COVID-19 while at FCI Phoenix.

Based on a review of the entire record, the court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if she had, the court would deny the motion based on a

consideration of the applicable 18 U.S.C. § 3553(a) factors.  Thus, for the following reasons, the motion is DENIED.

## II.  BACKGROUND

Defendant is a 34-year-old inmate incarcerated at FCI Phoenix with a projected release date of March 14, 2022.  *See* https://www.bop.gov/inmateloc/ (last visited December 28, 2020).

Defendant pled guilty on July 10, 2019 to a single-count Information charging her with conspiring to distribute 50 grams or more of methamphetamine.  *See* ECF Nos. 1, 6, 8.  On November 22, 2019, Defendant was sentenced to a total term of 30 months imprisonment, and a total term of three years of supervised release.  ECF Nos. 29, 30.[1]

On October 28, 2020, Defendant filed the instant motion for compassionate release, seeking a reduction of her sentence to time served.  ECF No. 32.  On November 12, 2020, the Government filed its Response, ECF No. 37.

On November 17, 2020, the court held a status conference to discuss whether Defendant exhausted her administrative remedies.  ECF No. 39.  On

---

[1] Defendant's total offense level 32, Criminal History Category IV, resulted in an advisory United States Sentencing Guideline range of 168 to 210 months incarceration.  The court varied downward based on various considerations and sentenced Defendant to a total term of 30 months, a term of incarceration significantly below the advisory guideline range.  *See* ECF No. 31.

November 23, 2020, Defendant was granted a two-week extension to file further documents relating to the exhaustion issue. ECF Nos. 40, 41. On December 7, 2020, Defendant filed a Supplemental Filing addressing her exhaustion of administrative remedies. ECF No. 42. This filing demonstrates that Defendant fully exhausted her administrative remedies.

The next day, December 8, the court received a letter from Defendant stating that she had contracted COVID-19. ECF No. 43. Defendant then supplemented the record with her medical records confirming the COVID-19 diagnosis. ECF No. 49 at PageID # 603 (medical records stating "confirmed case COVID-19" with an "order date" of November 29, 2020). Given this change in circumstance, the parties submitted additional supplemental briefing. ECF Nos. 51, 53. The latest medical records confirm that as of December 15, Defendant continued to experience a cough and congestion, but was well enough to return to general population. ECF No. 53-3 at PageID # 666. The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

///

///

///

///

## III.  DISCUSSION

**A.     Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) after consideration of the applicable section 3553(a) factors, the court determines that Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with any applicable Sentencing Commission's policy

statements.  Here, after reviewing supplemental briefing, the court finds that Defendant has exhausted her administrative remedies.  *See* ECF No. 42.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided Defendants the ability to file a motion for compassionate release (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act).  Several courts have thus determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release.  *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (stating that "U.S.S.G. § 1B1.13 is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion"); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (stating that when a defendant "exercises his new right to move for compassionate release on his own behalf" "§ 1B1.13 is not an 'applicable' policy statement at all"); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an

imprisoned person might bring before them in motions for compassionate release."); *but see United States v. Arceneaux*, 2020 WL 7230958, at *1 (9th Cir. Dec. 8, 2020) (mem.) (affirming district court's denial of compassionate release based in part on consideration of § 1B1.13(2)).

Previously, this court agreed that it could consider the "full slate" of extraordinary and compelling reasons, although for slightly different reasons. That is, the court determined that the Guideline commentary's fourth, catch-all provision (granting discretion to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist), applies equally to the court when ruling on motions for compassionate release. *See United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). Regardless of the ultimate reasoning applied, the court agrees with Defendant that the court is not bound by Guideline § 1B1.13's restrictions, but instead may make its own independent determination whether extraordinary and compelling reasons warrant a sentence reduction.

**B.     Extraordinary and Compelling Reasons Do Not Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bolden*, 2020 WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*,

2020 WL 4284128, at *4 (D. Or. July 27, 2020). Here, when Defendant filed her motion in October, she contended that she should be released from custody because: (1) she suffers from obesity,[2] and is thus at great risk while incarcerated at FCI Phoenix due to the COVID-19 pandemic; and (2) she is unable to provide the necessary self-care to manage her medical conditions at FCI Phoenix.[3] Since that time, Defendant has contracted COVID-19 and now argues that she is at a risk for reinfection. *See* ECF No. 53 at PageID # 651.

       The court agrees that Defendant's obesity places her at an increased risk for severe illness from COVID-19. According to the Centers for Disease Control and Prevention ("CDC"), individuals with "[o]besity (body mass index [BMI] 30 kg/m$^2$ or higher . . .)" fall into a high-risk category. *See* https://www.cdc.

---

[2] At the time her initial motion was filed, Defendant's medical records reflected that she is either 5'6" or 5'7" tall and her weight, as of September 30, 2020, was 193.8 pounds. ECF No. 36 at PageID # 434 (weight) and ## 436, 467 (height). At 5'6", Defendant's BMI is 31.3; at 5'7", Defendant's BMI is 30.4. *Calculated at* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited December 28, 2020). Further, BOP's own medical records reflect that defendant's BMI "is associated with an increased risk of severe illness and/or mortality related to COVID-19 . . . ." ECF No. 36 at PageID # 479. To the extent the United States argues that Defendant has not proven a BMI of 30 or greater, the court rejects that assertion.

[3] Defendant claims that her "ability to provide self-care is severely curtailed." ECF No. 32-1 at PageID # 285. But she has failed to demonstrate what self-care is needed for her moderate obesity, let alone how that care is now diminished. Instead, Defendant appears to rely in a general sense that the pandemic makes self-care more difficult.

gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 28, 2020).

On the other hand, at 34 years old, Defendant is not in a high-risk age group. As stated by the CDC:

> The risk for severe illness from COVID-19 increases with age, with older adults at highest risk. For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited December 28, 2020).

Further, that Defendant previously contracted COVID-19 and has since recovered counsels against a finding of extraordinary or compelling reasons to warrant granting the motion for compassionate release. As stated by the CDC, "[c]ases of reinfection of COVID-19 have been reported but are rare." *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited December 28, 2020). And the United States Department of Health and Human Services has stated that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again. Based on the reported recurrence rate from the

8

early stages of ongoing research, the chances of becoming reinfected appear to be very small." *See* https://combatcovid.hhs.gov/ive-had-covid-19 (last visited December 28, 2020). And a recent study by the University of Oxford and the Oxford University Hospitals NHS Foundation Trust found that those who previously had COVID-19 are highly unlikely to contract the illness again for at least six months following the first infection. *See* https://www.ox.ac.uk/news/2020-11-20-prior-covid-19-infection-offers-protection-re-infection-least-six-months# (last visited December 28, 2020). The National Cancer Institute agrees, reporting that the COVID-19 antibody "protective effect is strong and comparable to the protection afforded by effective SARS-CoV-2 vaccines, although developing protection from vaccination is much safer than from natural infection. This finding suggests that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection." *See* https://www.cancer.gov/news-events/cancer-currents-blog/2020/coronavirus-antibodies-protect-against-future-infection (last visited December 28, 2020).[4]

---

[4] In her supplemental brief, Defendant claims there is "currently" no evidence that antibodies will protect anyone from reinfection. *See* ECF No. 53 at PageID # 650. But Defendant cites to an April 24, 2020 publication, eons ago considering the knowledge learned about COVID-19 since that time.

Taking into account Defendant's age, risk factors, and that she has already contracted COVID-19, the court concludes that she has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release.

### C.     Section 3553(a) Factors

Even if Defendant had demonstrated that extraordinary and compelling reasons exist to justify compassionate release, the court would deny the motion based on a consideration of the § 3553(a) factors. *See United States v. Ruffin*, 978 F.3d. 1000, 1005 (6th Cir. 2020) (finding that even if a district court finds extraordinary and compelling reasons warrant a reduction in a defendant's sentence, "a district court may still deny relief if it finds that the 'applicable' § 3553(a) factors do not justify it").

As relevant to this case, the § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant";[5] and (2) "the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct;

---

[5] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including her rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

(c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2). And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). *Id.* § 3553(a).

At sentencing, Defendant was determined to be responsible for distributing 389 grams of almost pure methamphetamine. *See* Presentence Investigation Report ("PSR") ¶ 18, ECF No. 19 at PageID ## 83-84.

Defendant also has a significant criminal history, resulting in a criminal history category IV. *Id*. ¶¶ 39-44, ECF No. 19 at PageID ## 86-88. Aside from the instant conviction, Defendant has been convicted of the following offenses, among others: Unauthorized Control of a Propelled Vehicle and Promoting Dangerous Drug 3 in 2009; Unauthorized Possession of Confidential Personal Information, Promoting Dangerous Drug 3, and Unauthorized Control of a Propelled Vehicle in 2011; and Assault 3 in 2013. *Id.*

Further, at sentencing Defendant received a three-level upward adjustment for her role in the offense. *Id*. ¶ 29, ECF No. 19 at PageID # 85.

Finally, Defendant has a significant portion of her 30-month sentence to serve—she is not scheduled for release from custody until March 14, 2022.[6]

In mitigation, Defendant points out that her offense did not involve violence, no firearm was involved in the offense conduct, she is at a minimum security facility, and she has taken full advantage of BOP programming while in custody.  ECF No. 32-1 at PageID # 293-94.  Further, the court is aware that in varying downward—significantly downward—from the guideline range at sentencing, the court "noted the defendant's substantial rehabilitation from the time of the offense (August 2016) to sentencing."  ECF No. 31 at PageID # 274.

Considering all of the § 3553(a) factors, including the offense conduct, Defendant's prior convictions, the time remaining on Defendant's sentence, and the mitigating factors, reducing Defendant's sentence to time served would undermine the goals of sentencing set forth in § 3553(a)(2).

---

[6] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See, e.g.*, *Ruffin*, 978 F.3d at 1008; *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if she had, the court would deny the motion based on the relevant § 3553(a) factors.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 32, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 28, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Pavao-Kaaekuahiwi,* Cr. No. 19-00082 JMS, Order Denying Defendant's Emergency Motion to Reduce Sentence Under First Step Act (Compassionate Release), ECF No. 32